(Not for Publication)

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW JERSEY
CAMDEN VICINAGE

|  |  |  |
|---|---|---|
| WARREN DISTRIBUTING, CO. d/b/a HUB CITY DISTRIBUTING CO. and WARREN DISTRIBUTING CO. SOUTH, et al. | : : : : : : | |
| Plaintiffs, | : : | Civil No. 07-1053 (RBK) |
| v. | : : | **OPINION** |
| INBEV USA LLC and ANHEUSER-BUSCH, INC., | : : : | |
| Defendants. | : : | |

**KUGLER**, United States District Judge:

Presently before the Court are motions by defendants InBev USA LLC ("InBev") and Anheuser-Busch, Inc. ("Anheuser-Busch") to dismiss the Complaint filed by plaintiffs Warren Distributing Co., d/b/a Hub City Distributing Co. and Warren Distributing Co. South; Peerless Beverage Co., Inc.; and Shore Point Distributing Company (collectively "Plaintiffs") pursuant to Federal Rule of Civil Procedure 12(b)(6). Further before the Court is Plaintiffs' motion for leave to file a sur-reply. For the reasons set forth below, this Court will grant the motion for leave to file a sur-reply and deny the motions to dismiss.

1

**I. BACKGROUND**

Plaintiff companies are licensed to sell alcoholic beverages as wholesalers in the state of New Jersey. (Compl. ¶¶ 2-4.) Each had contracted to have exclusive rights within particular New Jersey counties to distribute certain brands of beer supplied by Defendant InBev ("the Brands") (Id. ¶¶ 10-12.) Collectively, Plaintiffs possessed exclusive rights to distribute the Brands within the state of New Jersey. (Id. ¶¶ 9, 13.)

On November 30, 2006, Defendant Anheuser-Busch entered into agreements with InBev's affiliate company, InBev nv/sa. (Id. ¶ 15.) As a result, Anheuser-Busch assumed the exclusive right to supply the Brands, previously supplied by InBev, within the United States. (Id.; Anheuser-Busch's Reply Br. Ex. 2.)[1] In late January, an Anheuser-Busch representative wrote letters notifying Plaintiffs that, as of February 23, 2007 for Warren and Shore Point, and February 24, 2007 for Peerless, it was terminating Plaintiffs' rights to distribute the Brands, and that Anheuser-Busch's preexisting network of New Jersey distributors would assume those rights. (Id. ¶¶ 17, 19-20.) In these letters, Anheuser-Busch informed Plaintiffs that they would receive payment for the fair market value of their business with respect to the Brands as well as additional "good faith cooperation" payments if they cooperated with the termination and provided several pieces of information, which Plaintiffs characterize as sensitive and proprietary. (Id. ¶¶ 33-34.) Plaintiffs refused to turn over the requested information, citing risk of unfair competitive advantage by the new wholesalers of the Brands. (Id. ¶ 48.)

Additionally, Plaintiffs sought the opportunity to negotiate the termination with

---

[1] Exhibit 2 consists of New Jersey brand registrations for the Brands. A court may refer to facts evinced by such public records when considering a 12(b)(6) motion. Benak v. Alliance Capital Mgmt. L.P., 349 F. Supp. 2d 882, 887 (D.N.J. 2004).

2

Anheuser-Busch, but without success. (Id. ¶¶ 24-25, 40-41.) Foregoing Plaintiffs' offered input, Anheuser-Busch unilaterally calculated the fair market value of Plaintiffs' business from the Brands by multiplying each plaintiff's gross profit from calendar year 2006 by 3.3 or 2.5, depending on the brand. (Id. ¶ 36.) Plaintiffs informed Anheuser-Busch that these calculations yielded amounts far short of the actual fair market value of their business from the Brands. (Id. ¶ 40, 44.) By letter dated February 16, 2007, Anheuser-Busch refused to discuss the fair market valuation and stated that the payment it was offering to Plaintiffs would be reduced "to reflect the substantial harm [the new Brand wholesalers] would incur due to [Plaintiffs'] lack of cooperation." (Id. ¶ 42.) On February 23, 2007, Anheuser-Busch gave Plaintiffs checks in amounts slightly less than its previous calculations, which it stated represented fair market value of Plaintiffs' business with respect to the Brands. (Id. ¶ 49.)

On February 21, 2007, Plaintiffs filed suit in the Equity Division of the Superior Court of New Jersey against Anheuser-Busch, InBev, and the new Brand wholesalers, seeking temporary and preliminary restraints against the termination of their distribution rights. (Id. ¶ 62.) The Superior Court denied Plaintiffs' application, concluding that monetary damages could adequately compensate Plaintiffs for their alleged losses. (Id. ¶ 63.) The next day, the termination took effect, and since that time, both Anheuser-Busch and InBev have refused to supply the Brands to Plaintiffs. (Id. ¶ 64.)

Plaintiffs brought this action on March 6, 2007, alleging that Defendants' actions violated New Jersey's Malt Alcoholic Beverage Practices Act ("the Practices Act" or "the Act"), N.J. Stat. Ann. §§ 33:1-93.12 through -93.20; that Anheuser-Busch and InBev conspired to violate the Act, that InBev breached their contracts with Plaintiffs; and that Anheuser-Busch tortiously

interfered with Plaintiffs' contractual relations with InBev.  Defendants each filed a motion to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6), both of which Plaintiffs opposed.  Defendants then each filed a reply, and Plaintiffs responded with a motion for leave to file a sur-reply, which attached the sur-reply.  Finally, Anheuser-Busch responded to the sur-reply.

## II.  STANDARD UNDER RULE 12(b)(6)

Pursuant to Federal Rule of Civil Procedure 12(b)(6), a complaint or portions of a complaint may be dismissed for failure to state a claim on which relief can be granted.  Fed. R. Civ. P. 12(b)(6).  When reviewing a Rule 12(b)(6) motion to dismiss, the Court must accept as true all allegations in the complaint and must provide the plaintiff with the benefit of all inferences that may be fairly drawn from the contents of the complaint.  Kost v. Kozakiewicz, 1 F.3d 176, 183 (3d Cir. 1993); Wilson v. Rackmill, 878 F.2d 772, 775 (3d Cir. 1989).  "Factual allegations must be enough to raise a right to relief above the speculative level."  Bell Atl. Corp. v. Twombly, 127 S. Ct. 1955, 1964 (2007) (citation omitted).

## III.  ANALYSIS

The first three counts of Plaintiffs' complaint allege violations of New Jersey's Practices Act, which took effect March 1, 2006.  The Act was passed to "regulate the business relationship between brewers and wholesalers of malt alcoholic beverages . . . and protect beer wholesalers from unreasonable demands and requirements by brewers."  N.J. Stat. Ann. § 33:1-93.13(c).  The parties agree that the Practices Act governs their relationships.  The parties also concur that Plaintiffs are "wholesalers" and Defendants are "brewers," as defined by the Practices Act.

The Practices Act prohibits a brewer from "terminat[ing] . . . a contract . . . with a wholesaler . . . except where the brewer establishes that it has acted for good cause and in good

faith." § 33:1-93.15(c)(1). "Good cause" is defined as "failure to substantially comply with reasonable terms contained in a contract or agreement." § 33:1-93.14. The Act states further that it is a violation for a brewer "to fail to act, during the term of the contract, agreement or relationship between [a brewer and a wholesaler] in a manner consistent with the covenant of good faith and fair dealing." § 33:1-93.15(c)(1).

The Practices Act also provides, however:

It shall not be a violation of this act for a successor brewer to[] . . . terminate, in whole or in part, its contract, agreement or relationship with a wholesaler, or the contract, agreement or relationship with a wholesaler of the brewer it succeeded, for the purpose of transferring the distribution rights in the wholesaler's territory for the malt alcoholic beverage brands to which the successor brewer succeeded, to a wholesaler or wholesalers that then distributes other products of the successor brewer in such territory, provided that the successor brewer or the second wholesaler or wholesalers first pays to the first wholesaler the fair market value of the first wholesaler's business with respect to the terminated brand or brands[.]

§ 33:1-93.15(d)(1). A "successor brewer" is defined as "any person, not under common control with the predecessor brewer, who by any means . . . acquires the business or malt alcoholic beverage brands of another brewer, or otherwise succeeds to a brewer's interest with respect to any malt alcoholic beverage brands." § 33:1-93.14. Additionally, the Practices Act creates a right of action for any brewer or wholesaler to sue "a brewer for violation of this act, or . . . a successor brewer in connection with a termination pursuant to [section 33:1-93.15(d)(1)]." Another relevant portion of the Act states: "any provision of a contract . . . that directly or indirectly requires or amounts to a waiver of any provision of this act, or that would relieve any person of any obligation or liability under this act . . . shall be a violation of this act and shall be null, void and of no effect." § 33:1-93.15(a).

In their complaint, Plaintiffs allege that Defendants violated the Practices Act because

5

Plaintiffs complied with all material terms of their distribution agreements with InBev, so there was no good cause for the termination of their distribution rights; Defendants did not afford them notice or opportunity to cure any perceived deficiencies; and InBev failed to adhere to the covenant of good faith and fair dealing. (Compl. ¶¶ 29, 31, 69-71.) Plaintiffs also disclaim Defendants' reliance on the Act's provision regarding successor brewers at section 33:1-93.15(d)(1). (Compl. ¶¶ 73, 79.)

### A.  Violation of the Practices Act Against Anheuser-Busch

Anheuser-Busch contends that its actions did not violate the Practices Act because it qualifies as a "successor brewer" under the terms of the Act. It argues that the Act's general good cause and good faith requirements do not apply to it because the it was never in privity of contract with Plaintiffs and because the specific statutory language applying to successor brewers at section 33:1-93.15(d)(1) exempts it from those more general obligations. Plaintiffs counter that whether Anheuser-Busch is a successor brewer under the Act depends on evidence outside the pleadings and consequently cannot be determined on a motion to dismiss. Plaintiffs are correct.

In support of its motion to dismiss, Anheuser-Busch attaches documents from the New Jersey Department of Law and Public Safety, Division of Alcoholic Beverage Control revealing that Anheuser-Busch registered the Brands for sale or distribution within the state effective June 22, 2006 for some and February 6, 2007 for the rest. (Anheuser-Busch's Reply Br. Ex. 2.) Anheuser-Busch argues that these public records conclusively establish that it is a successor brewer and therefore, section 33:1-93.15(d)(1) applies to its actions. The documents do suggest that Anheuser-Busch, by some means, "acquire[d] the . . . malt alcoholic beverage brands of

6

another brewer, or otherwise succeed[ed] to a brewer's interest with respect to . . . malt alcoholic beverage brands." See § 33:1-93.14.  That evidence, however, is not determinative of whether Anheuser-Busch qualifies as a successor brewer or whether section 33:1-93.15(d)(1) applies. Two remaining factual questions preclude those determinations: (1) whether Anheuser-Busch was under common control with the alleged predecessor brewer InBev; and (2) whether Anheuser-Busch paid Plaintiffs fair market value.  Thus, the Court cannot now decide that section 33:1-93.15(d)(1) permitted Anheuser-Busch's actions.

Anheuser-Busch argues in the alternative that since it was not party to any contracts with Plaintiffs, Plaintiffs do not have a cause of action against it under the Practices Act.  The parties agree that no contractual relationships existed between Plaintiffs and Anheuser-Busch. Nevertheless, the language in the Practices Act is extremely broad and does not limit its applicability to parties in privity.  The Act makes it a violation for "a brewer . . to terminate . . . a contract, agreement or relationship with a wholesaler."  § 33:1-93.15(c)(1).  This language does not require the brewer to be party to a contract in order to face liability from an injured wholesaler.  Anheuser-Busch concedes that it is a "brewer."  Plaintiffs allege that although it did not have a right to do so, Anheuser-Busch terminated Plaintiffs' distribution agreements.  As a result, Plaintiffs make out a claim that Anheuser-Busch violated the Practices Act.

   B.  <u>Violation of the Practices Act Against InBev</u>

InBev argues that it did not violate the Practices Act because it did not terminate its distribution agreements with Plaintiffs.  Rather, citing section 4.2 of those agreements, InBev states that they expired by their own terms when Anheuser-Busch replaced InBev as the U.S. distributor of the Brands.  Plaintiffs respond with several arguments, including that the contract

provision on which InBev relies is nullified by the Practices Act.

      Each of Plaintiffs' distribution agreements contained the following provision:

> [Plaintiffs] also agree[] and acknowledge[] that [InBev] may end its relationship with a foreign manufacturer or seller as to one or more Supplier Products at any given time. Accordingly, and for whatever reason, should [InBev] cease functioning as the United States Supplier for any one or more [of the Brands, Plaintiffs] agree that [they] shall have no claim for compensation or cause of action against [InBev] for damages of any kind whatsoever and this Agreement shall terminate immediately.

(Compl. Exs. A-C § 4.2.)  The public record, pointed to by Defendants, includes Securities and Exchange Commission filings supporting their contention that, effective February 1, 2007, InBev ceased to function as the U.S. supplier for the Brands.  See Anheuser-Busch's 3/1/2007 10-k, http://www.sec.gov/Archives/edgar/data/310569/000106880007000566/ab10k.htm#a005.

      Depending on facts yet unestablished, however, the Practices Act may render section 4.2 of the distribution agreements void.  Section 4.2 of the agreements contemplates a scenario similar but not identical to section 33:1-93.15(d)(1) of the Practices Act: one brewer succeeding another as the supplier of particular brands.  The distribution agreements purport to expire automatically upon such an event.  The applicable portions of the Act, however, permit only two means of termination: where the brewer has good cause, and absent good cause, where a successor brewer terminates a contract to redirect the brands to its own wholesalers.  Plaintiffs have alleged that Defendants offered no good cause justification for the termination, and they have further alleged that section 33:1-93.15(d)(1) does not apply to Defendants' actions, citing among other facts, Defendants' failure to pay fair market value for the Brands.  Accordingly, if discovery reveals that Anheuser-Busch does not qualify as a successor brewer, then section 4.2 would create a means of terminating the contracts not permitted by the Practices Act.  In that event, since section 4.2 would effectively relieve Defendants of obligations created by the Act, it

would be nullified.  See § 33:1-93.15(a) (stating any contract provision that amounts to a waiver of any requirement of the Act "shall be null, void, and of no effect").

Assuming, as alleged by Plaintiffs, that section 33:1-93.15(d)(1) does not cover Defendants, Plaintiffs allege sufficient additional facts to make a claim that InBev violated the Practices Act.  They attest that InBev stopped supplying them with the Brands after February 23, 2006, thereby terminating their contracts without proffering good cause, notice, or opportunity to cure any perceived deficiencies.  Furthermore, even if section 33:1-93.15(d)(1) does apply to Defendants, Plaintiffs also allege that InBev did not follow the covenant of good faith and fair dealing, as mandated by the Act.  Specifically, Plaintiffs attest that InBev improperly authorized Anheuser-Busch to interfere with InBev's contractual relationships with Plaintiffs, wrongly disseminated Plaintiffs' proprietary information, and induced Plaintiffs to build up their inventories of the Brands so as to wield greater control over them when terminating the agreements.  (Compl. ¶ 72.)  Therefore, Plaintiffs' claim against Anheuser-Busch for violation of the Act must survive.

   C. Violation of the Practices Act Against InBev and Anheuser-Busch

Plaintiffs allege that Defendants cooperated in attempting to coerce Plaintiffs into waiving their rights under the Practices Act and accepting less than the fair market value of their business from the Brands.  As previously established, Plaintiffs have set forth well-pleaded claims that both Anheuser-Busch and InBev violated the Practices Act.  Plaintiffs further allege cooperation between InBev and Anheuser-Busch to terminate distribution contracts without good cause, hence the third count of Plaintiffs' complaint will also survive.

D.   Civil Conspiracy

In response to Plaintiffs' contention that InBev and Anheuser-Busch conspired to violate the Practices Act, Defendants again argue that the distribution agreements ended by their own terms and thus, Defendants did not terminate them. Plaintiffs refer to section 33:1-93.15(a) in arguing that section 4.2 is rendered null and void because it would effectively relieve Defendants of liability under the Act. Plaintiffs' conspiracy claim will survive, since Plaintiffs plead facts that would nullify section 4.2.

Under New Jersey law, the elements of a civil conspiracy are "(1) a combination of two or more persons; (2) a real agreement or confederation with a common design; (3) the existence of an unlawful purpose to be achieved by unlawful means; and (4) special damages." Farris v. County of Camden, 61 F. Supp. 2d 307, 330 (D.N.J. 1999). To sustain an action for civil conspiracy "a plaintiff must also point to (1) an overt act of one or more of the conspirators in furtherance of the conspiracy; and (2) consequential damage to the rights of another, of which the overt act is the proximate cause." Id. A claim for civil conspiracy will not lie "unless defendants committed an act which would be actionable even without the conspiracy." Id.

As set forth above, the contractual provision that Defendants maintain caused Plaintiffs' distribution agreements to expire by their own terms would be rendered invalid by the Practices Act if Plaintiffs succeed in proving that Anheuser-Busch is not a successor brewer. Given that possibility, Plaintiffs have adequately plead the conspiracy count of their complaint. Specifically, they allege that InBev and Anheuser-Busch had an agreement with the common unlawful purpose of ending Plaintiffs' contracts and using coercive tactics to minimize the amount they would need to pay Plaintiffs, thereby causing Plaintiffs economic harm. Plaintiffs

10

have also pointed to overt acts and resulting damages, as required for a conspiracy claim, including InBev inducing Plaintiffs' accumulation of Brand inventory to gain leverage in the termination process, InBev improperly sharing Plaintiffs' proprietary information with Anheuser-Busch, and Anheuser-Busch withholding information about its fair market value determination in an effort to coerce proprietary information from Plaintiffs. (<u>See</u> Compl. ¶¶ 84, 92.) Thus, Defendants' motions to dismiss Count Four of Plaintiffs complaint will also be denied.

      E.      <u>Breach of Contract Against InBev</u>

Plaintiffs allege that InBev breached their distribution agreements when it refused to supply Plaintiffs with the Brands. (Compl. ¶ 96.) On this claim, InBev again relies on section 4.2 of the distribution agreements. As previously noted, Plaintiffs have adduced facts that would make section 4.2 of the agreements void, and consequently it is not a basis to dismiss Plaintiffs' claims.

The essential elements of a cause of action for breach of contract are a valid contract, defective performance by the defendant, and resulting damages. <u>Coyle v. Englander's</u>, 488 A.2d 1083, 1088 (N.J. Super. Ct. App. Div. 1985). Here, it is undisputed that InBev had valid contracts with Plaintiffs. Moreover, Plaintiffs allege defective performance by InBev in that InBev was obligated to supply them with the Brands and ceased to do so via impermissible termination by a third party. Finally, Plaintiffs maintain they suffered damages as a result of InBev's breach. Accordingly, Plaintiffs establish a claim for breach of contract on which relief can be granted.

F.     Tortious Interference Against Anheuser-Busch

Anheuser-Busch attempts to rely on the same inadequate basis cited above for dismissal of this final count.  Although, Anheuser-Busch also submits that Plaintiffs failed to allege facts in their complaint demonstrating malice, since it argues its conduct was authorized by section 33:1-93.15(d)(1) of the Practices Act.  As set forth above, this argument too fails.

A claim for tortious interference with an existing contract requires a plaintiff to allege: (1) an existing contractual relationship; (2) intentional interference with that relationship; (3) the malicious nature of the interference; and (4) damages resulting from the interference.  Matrix Essentials, Inc. v. Cosmetic Gallery, Inc., 870 F. Supp. 1237, 1248 (D.N.J. 1994).  "The term 'malice' does not require ill will toward the plaintiff, but rather 'is defined to mean that the harm was inflicted intentionally and without justification or excuse.'"  Id. (quoting Printing Mart-Morristown v. Sharp Elecs. Corp., 563 A.2d 31, 37 (N.J. 1989)).  Malicious conduct violates "standards of socially acceptable conduct."  Id. (citations and internal quotations omitted).

Here, Plaintiffs allege enough facts for a well-pleaded claim of tortious interference.  As previously stated, Anheuser-Busch's two arguments in support of their motions to dismiss must fail – section 4.2 cannot yet save Defendants from Plaintiffs' claim of breach, and Plaintiffs have made out a claim that Defendants' conduct was not in compliance with the Practices Act.  Furthermore, Plaintiffs allege: (1) an existing contractual relationship of which Anheuser-Busch was aware; (2) Anheuser-Busch sent Plaintiffs letters purporting to terminate their distribution agreements, knowing that such termination would cause Plaintiffs serious economic harm; (3) Anheuser-Busch engaged in this interference for its own economic advantage and without legal

privilege or excuse; and (4) the interference caused substantial harm to Plaintiffs. (Compl. ¶¶ 98-105.) As such, the Court will also deny Anheuser-Busch's motion to dismiss the sixth count of Plaintiffs' complaint.

**IV.  CONCLUSION**

      Based on the foregoing reasoning, this Court will deny the motions to dismiss of both Anheuser-Busch and InBev. An accompanying Order shall issue today.


Dated: 12/20/07                                           s/ Robert B. Kugler
                                                                               ROBERT B. KUGLER
                                                                               United States District Judge