[Doc. No. 53]

**THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW JERSEY
CAMDEN VICINAGE**

| | | |
|---|---|---|
| **WARREN DISTRIBUTING CO., d/b/a** | : | |
| **HUB CITY DISTRIBUTING CO., et. al.,** | : | |
| | : | |
| **Plaintiffs** | : | |
| | : | |
| v. | : | **Civil No. 07-1053 (RBK)** |
| | : | |
| **INBEV USA L.L.C. and ANHEUSER-** | : | |
| **BUSCH, INC.,** | : | |
| | : | |
| **Defendants.** | : | |

**OPINION AND ORDER**

This matter is before the Court on the "Motion to Compel Production of Joint Defense

Privilege and Confidentiality Agreement" [Doc. No. 53] filed by Alva C. Mather, Esquire,

counsel for Plaintiffs, Warren Distributing Co., d/b/a Hub City Distributing Co. and Warren

Distributing Co. South, Peerless Beverage Co., Inc., and Shore Point Distributing Co.

(hereinafter collectively "plaintiffs").  Plaintiffs seek to compel the production of the joint

defense agreement ("the Agreement") between defendant, Anheuser-Busch, Inc. (hereinafter "A-

B"), and InBev, S.A., the parent company of defendant, InBev USA L.L.C. (hereinafter "InBev

USA").  The Court has received A-B's opposition [Doc. No. 59] and plaintiffs' reply [Doc. No.

60].  Before issuing this Order the Court reviewed the Agreement in camera.  The Court has

exercised its discretion to decide plaintiffs' motion without oral argument. For the following

reasons plaintiffs' motion is DENIED.

**Background**

Plaintiffs filed their complaint [Doc. No. 1] on March 6, 2007.  Prior to the events leading up to this lawsuit InBev, S.A. entered into an Import Agreement with InBev USA to import certain brands of beer into the United States.  While this Import Agreement was in effect plaintiffs had in place Distribution Agreements with InBev USA for the exclusive right to distribute certain brands of beer in New Jersey.  On November 30, 2006, InBev S.A. entered into a new Import Agreement with A-B and thereafter plaintiffs' distribution rights were terminated and taken over by A-B.  In their complaint, plaintiffs allege breach of contract, interference with contract, conspiracy and violation of the New Jersey Malt Alcoholic Beverage Practices Act, N.J.S.A. 33:1-93.15(d)(1), for the termination of their Distribution Agreements.  In response to plaintiffs' complaint defendants filed Motions to Dismiss pursuant to Fed. R. Civ. P. 12(b)(6) [Doc. Nos. 6 and 13].  The Honorable Robert B. Kugler, U.S.D.J., denied Defendants' Motions [Doc. Nos. 33 and 34].

Plaintiffs argue the Agreement should be produced because it is relevant to the claims and defenses between the parties.  Specifically, plaintiffs contend the Agreement is relevant to their claims of conspiracy and defendants' defense that, pursuant to the terms of the Import Agreement, they are entitled to the limited protections available to a "successor brewer" under N.J.S.A. 33:1-93.15(d)(1).  Plaintiffs also argue the information in the Agreement is not privileged because it contains no "substantive terms" and "merely memorializes [AB's and InBev Belgium's] mutual desire to protect from waiver those privileged communications shared between them as part of their negotiation and implementation of the Import Agreement."  Brief at 2.  Plaintiffs further argue that if the Agreement contains information protected by the work

2

product privilege, the Agreement should be redacted and produced.

A-B opposes plaintiffs' motion and argues that "[o]n April 1, 2008, this Court denied plaintiffs' motion to compel production of this agreement without prejudice, finding that the Joint Defense Agreement was 'irrelevant and unnecessary' to address the issues on which discovery was focused at the time and that production of the agreement raised 'significant legal privilege issues.'" Brief at 1.  A-B contends plaintiffs' motion recycles the same arguments as to relevance that the Court previously found unpersuasive, specifically that the Agreement is incorporated into the relevant Import Agreement.  A-B also contends the Agreement contains no specific business information and is merely referenced in the Import Agreement as another agreement entered into by the parties, not incorporated into it.

A-B also argues the Agreement is protected by the work product privilege and should not be produced.  A-B contends the purpose of the Agreement was to ensure that communications between different corporate parties did not waive any privilege, and not, as plaintiffs argue, to confer a privilege on an otherwise non-privileged document.

**Discussion** [1]

 Pursuant to Fed. R. Civ. P. 37(a)(1) and (a)(3)(B), a party may move for an order compelling discovery when a party fails to respond to written discovery propounded under Fed. R. Civ. P. 33 and 34.  "Parties may obtain discovery regarding any nonprivileged matter that is relevant to any party's claim or defense."  Fed. R. Civ. P. 26(b)(1).  For good cause the court may

---

[1] Plaintiffs correctly point out that this Court has not previously issued a definitive ruling on whether the Agreement is discoverable.  On April 1, 2008, the Court simply denied without prejudice plaintiffs' oral application for a copy of the Agreement.  The Court's ruling was made without the benefit of a formal motion and briefs.  (See April 1, 2008 Tr. 18:18-21).

order discovery of any matter relevant to the subject matter involved in the action. Id. Relevant information does not need to be admissible at trial to be discoverable.  Id.  It only needs to appear reasonably calculated to lead to the discovery of admissible evidence.  Id.  Relevant evidence is evidence "having any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence."  F.R.E. 401.  Accordingly, in order to decide if the Agreement must be produced the Court must first determine if it is relevant.  If the Court determines that the Agreement is relevant it must then decide if it is privileged and if the privilege was waived.

The Court notes that it is not deciding any privilege issues at this time for the reason that plaintiffs have not challenged defendants' invocation of any privilege.  ("Plaintiffs do not, at this time, challenge the privileged nature of any of the underlying documents but reserve their right to do so."  Brief at 4). Instead, the issue before this Court is whether the Agreement is discoverable.  Because the Court is only asked to decide whether the Agreement is relevant or privileged, it will not address the validity of defendants' underlying privilege objections.

By way of background, what the parties refer to as the "joint defense privilege"  is now known as the "community of interest privilege." In re Teleglobe Communications Corporation, 493 F.3d 345, 364 n. 20 (3d Cir. 2007).  This privilege "allows attorneys representing different clients with similar legal interests to share information without having to disclose it to others." Id. at 364.  As noted by the Restatement (Third) of the Law Governing Lawyers, §76(1), "[i]f two or more clients with a common interest in a litigated or nonlitigated matter are represented by separate lawyers and they agree to exchange information concerning the matter, a communication of any such client ... is privileged as against third persons."  In order for the privilege to apply the

4

communication must be shared with the attorney of the member of the community of interest.  Id. The privilege only applies when clients are represented by separate counsel.  Id. at 365.  Also, all members of the community must share a common legal interest in the shared communication.  Id. Generally, the voluntary disclosure of a privileged communication to a third party waives the privilege.  See United States v. Rockwell Int'l, 897 F.2d 1255, 1265 (3d Cir. 1990).  However, the community of interest privilege "enables counsel for clients facing a common litigation opponent to exchange privileged communications and attorney work product in order to adequately prepare a defense without waiving either privilege."  Haines v. Liggett Group, Inc., 975 F.2d 81, 94 (3d Cir. 1992).

Turning to the discovery issue before the Court, a party's mere characterization of a document as a joint defense agreement is not controlling as to whether the document it is relevant and therefore subject to discovery.  Thus, the Court declines to adopt a blanket rule that a document merely denominated as a joint defense agreement should never be disclosed.  The basis of this finding is that it is possible that a joint defense agreement may serve more than one purpose and that some portions of the document may be irrelevant or privileged, and another part may be relevant and discoverable.  Jeld-Wen, Inc. v. Nebula Glasslam International, Inc., No. 07-22326-CIV, 2008 WL 756455 (S.D. Fla. March 11, 2008).  The relevancy of a joint defense agreement depends upon the language in the agreement. For this reason, it was necessary for the Court to review the Agreement in camera before it ruled on plaintiffs' motion.

After reviewing the Agreement the Court finds it unnecessary to order the production of the document and will therefore deny plaintiffs' motion.  A-B's representation that the Agreement does not contain any substantive business information is correct.  The Agreement

merely contains language that parties typically include in joint defense agreements to protect from discovery privileged information revealed to a third party.  After its detailed review, the Court finds the only arguably relevant information in the Agreement has been disclosed. Plaintiffs already know the Agreement was entered into between InBev S.A. and Anheuser-Busch Companies, Inc., and their attorneys, on May 8, 2006.  Further, A-B has already acknowledged that during the course of the negotiations leading to the Import Agreement, "Anheuser-Busch and InBev nv/sa anticipated that the agreement could give rise to legal and regulatory issues in which they would share a common interest." Brief at 3.  Specifically, the Agreement provided that the parties thereto had common interests in analyzing the factual, legal and regulatory issues that might arise in connection with obtaining regulatory approvals for, or defending any challenges to, the  "possible entry by the Clients into a business transaction, including without limitation an agreement by which Anheuser-Busch Companies, Inc., or a subsidiary or affiliate thereof, becomes the U.S. importer of one or more beer brands served by InBev S.A., or a subsidiary or affiliate thereof."  Agreement at 1. Aside from the aforementioned information, nothing else in the Agreement is relevant to the parties' claims and defenses.

The Third Circuit has not directly addressed the issue of the relevance of a joint defense agreement.  However, courts that have addressed the issue have doubted their relevance to issues in dispute and have barred their production.  See Fort v. Leonard, Civil No. 7:05-1028-HFF-WMC, 2006 WL 2708321, at *3 (D.S.C. September 20, 2006) (finding that the terms of a written or oral joint defense agreement were not relevant or discoverable and that  communications amongst counsel was privileged under the common interest rule); Broessel v. Triad Guaranty Insurance Corp., 238 F.R.D. 215, 217 (W.D. Ky. 2006) (holding that joint defense agreements

requested by the plaintiff did not have to be produced because they were not relevant to the claim or defense of any party); United States v. Int'l Longshoremen's Ass'n, Civil No. 05-3212 (ILG)(VVP), 2006 WL 2014093, at *1 (E.D.N.Y. July 18, 2006) ("information concerning joint defense agreements is sensitive, and ... disclosure of such information should not be lightly ordered.  Put another way, the relevance of the information should be well-established before compelling its disclosure").  The Court notes that plaintiffs have not cited a single case where a court ordered the production of a joint defense agreement.

Plaintiffs argue the Agreement should be produced because the "relevance of pre-Import Agreement communications and agreements between AB and InBev entities cannot be disputed." Reply Brief ("Rb") at 2.  Plaintiffs are correct that this is a relevant area of inquiry.  However, not all communications between the parties is relevant and discoverable.  The fact that a joint defense agreement was signed is not evidence of the conspiracy plaintiffs allege existed.  If this were the case courts would routinely order the production of joint defense agreements.   In fact, however, plaintiffs have not cited to a single case where a joint defense agreement was held discoverable.  Plaintiffs also correctly note that they are entitled to discovery regarding "when and how the [defendants' alleged] conspiracy was first launched."  RB at 2.  However, as noted, the terms of the Agreement are irrelevant to this inquiry.  Plaintiffs can certainly explore in discovery the extent of the parties' communications regarding issues that impact upon plaintiffs' New Jersey franchise agreements.  The Agreement does not contain information relevant to this inquiry.[2]

_____

[2]Plaintiffs argue the Agreement should not apply to exchanges between A-B and members of InBev USA.  Rb at 3.  This issue is not addressed in this Order and will only be ripe when and if plaintiffs challenge the designations in defendants' privilege log.

Plaintiffs also argue the Agreement is relevant because "by its own terms, the Import Agreement encompasses the Joint Defense Agreement."  Rb at 4.  According to plaintiffs the Import Agreement states, "[t]his import agreement, together with the joint defense agreement, constitutes the entire agreement between the parties." <u>Id</u>.  This contractual provision when read in context, does not confer any special importance on the Agreement.  Whether or not the Agreement is incorporated into the Import Agreement does not change the fact that aside from the language cited in this Order the terms of the Agreement are not relevant to the parties' claims and defenses.  Plaintiffs contend they must review the actual Agreement in order to assess the "merits of the [defendants'] privilege claim." Brief at 4.  Plaintiffs are mistaken.  Plaintiffs are already in possession of the information they need to determine the merits of defendants' privilege claims.  As noted by A-B, "the joint defense privilege was not used to confer privilege upon an otherwise unprivileged document....  Rather, it was used only to ensure that an otherwise privileged communication was not waived simply because it was shared between Anheuser-Busch and InBev."  <u>Id</u>. Further, if the Court accepts plaintiffs' argument that they must review the Agreement in order for them to evaluate the merits of defendants' privilege claim, then joint defense agreements would be routinely produced in discovery.  This position is contrary to the applicable case law.

**<u>Conclusion</u>**

Other than the provisions of the Agreement identified in this Order plaintiffs have failed to establish the relevance of the Agreement to any claims or defenses in the case. Therefore, the

Court finds that the Agreement does not have to be produced and will deny plaintiffs' motion.[3]

Accordingly, for all the foregoing reasons,

IT IS on this 18th day of September, 2008 hereby

ORDERED that Plaintiffs' Motion to Compel is DENIED.


                    /s/ Joel Schneider
_____
                    JOEL SCHNEIDER
                    United States Magistrate Judge

---

[3] Since the Court has decided that the Agreement is not relevant, it does not need to address whether the Agreement is privileged.

9