IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW JERSEY
CAMDEN VICINAGE

| | |
|---|---|
| WARREN DISTRIBUTING CO., d/b/a HUB CITY DISTRIBUTING CO. AND WARREN DISTRIBUTING CO. SOUTH, PEERLESS BEVERAGE CO., INC., AND SHORE POINT DISTRIBUTING CO.,<br><br>Plaintiffs,<br><br>v.<br><br>INBEV USA, LLC AND ANHEUSER-BUSCH, INC.,<br><br>Defendants. | Civil No. 07-1053-RBK-JS<br><br>Jury Trial |

**PLAINTIFFS' RESPONSE IN OPPOSITION TO
DEFENDANT ANHEUSER-BUSCH'S MOTION *IN LIMINE*
TO EXCLUDE THE EXPERT TESTIMONY OF A. CRAIG MACKINLAY**

Even if Anheuser-Busch, Inc.'s ("AB") motion to exclude Professor MacKinlay's testimony had any merit – and it does not – its timing would be so offensive to the "rules of the game" as to cry out for summary denial.

As this Court has explained, "a party may waive the issue of admissibility of testimony by failing to timely object to its admission." John M. Floyd & Assocs., Inc. v. Ocean City Home Bank, No. 03-1473, 2008 WL 4534079, at *3 (D.N.J. Oct. 2, 2008) (citing Fed. R. Evid. 103). "An objection is timely if it is made as soon as its pertinency is apparent to the opponent." Id. (citing 1 Wigmore, Evidence § 796 (Tillers rev. 1983); see also Garcia v. Sec'y of Health & Human Servs., No. 05-0720V, 2010 WL 2507793, at * 9 n.19 (Fed. Cl. May 19, 2010) (noting a party's obligation to timely raise and preserve a Daubert challenge "from the moment notice is had of the expert's lack of qualification or unreliability."); Barclay v. Mercy Health Services-Iowa Corp., No. 07-4074, 2009 WL 2462292, at *1 (N.D. Iowa Aug. 12, 2009) (summarily

denying a party's technically timely <u>Daubert</u> motion when "there is no reason that such a 'Daubert' challenge could not have been filed much sooner" and that "the timing of the motion smacks of gamesmanship").

Consider the record:  First, AB has been aware for a year today (since July 15, 2009) of Plaintiffs' engagement of Professor MacKinlay as an expert in this matter, his opinion on the hotly contested issue of the appropriate discount rate and the basis for his opinion.  Second, AB went out and engaged its own primary expert, Samuel J. Kursh, as well as an additional expert, Brent Solomon, to respond to the opinions and methodology used by Professor MacKinlay. Third, AB subpoenaed Professor MacKinlay's records and took his deposition on September 11, 2009, more than ten months ago, and every one of the matters AB raises in its last-minute motion was explored and addressed by Professor MacKinlay in that deposition.  Fourth, AB moved to exclude the testimony of Plaintiffs' other expert, Robert Taylor, on October 19, 2009, almost nine months ago.  AB offers no excuse for wanting a second bite of <u>Daubert</u> at this late date. Fifth, after having a year to consider Professor MacKinlay's qualifications, methodology and opinions, AB submitted its portion of the Joint Final Pretrial Order to this Court last Thursday, July 8, 2010, in which it failed to note any objection to Professor MacKinlay or even to state that it anticipated filing a motion in limine to exclude his testimony.  <u>See</u> <u>John M. Floyd</u>, 2008 WL 4534079, at *4 (one reason for denying motion to exclude expert was defendant's failure to offer any objection in the Joint Final Pretrial Order).  AB offers no excuse for all this delay, nor can we think of one.  The Court should summarily deny AB's motion without considering its content.

But AB will fare no better if the Court grants an indulgence and reads the motion.  AB's sole challenge to the admission of Professor MacKinlay's testimony at trial is the reliability of

2

the methodology he used to independently calculate the cost of capital (or discount rate) that is appropriate to be used to determine the fair market value of Plaintiffs' distribution rights to the InBev Brands.  Anheuser-Busch specifically challenges Professor MacKinlay's use of the Fama-French Three-Factor Model and the Dow USA Low Cap Brewers Index.

The governing standards should be known to AB; after all, this Court spelled them out in detail in its recent Opinion rejecting the attack on Mr. Taylor.  The admissibility of expert testimony is governed by Rule 702 of the Federal Rules of Evidence, which provides:

> If scientific, technical, or other specialized knowledge will assist the trier of fact to understand the evidence or to determine a fact in issue, a witness qualified as an expert by knowledge, skill, experience, training, or education, may testify thereto in the form of an opinion or otherwise, if (1) the testimony is based upon sufficient facts or data, (2) the testimony is the product of reliable principles and methods, and (3) the witness has applied the principles and methods reliably to the facts of the case.

The Third Circuit has emphasized that "[t]he test of admissibility is not whether a particular scientific opinion has the best foundation or whether it is demonstrably correct.  Rather the test is whether the 'particular opinion is based on valid reasoning and reliable methodology.'  'The analysis of the conclusions themselves is for the trier of fact when the expert is subjected to cross-examination.'" Oddi v. Ford Motor Co., 234 F.3d 136, 145-46 (3d Cir. 2000) (internal citations omitted) (quoting Kannankeril v. Terminix Int'l Inc., 128 F.3d 802, 806 (3d Cir. 1997)).  The Third Circuit has also specifically cautioned against excluding the testimony of valuation experts from the province of the jury, emphasizing that "[a] court may not substitute its judgment for that of experts in the field of valuation as to what [] data an expert should rely upon in reaching an opinion, for in doing so it invades the province of the jury." Indian Coffee Corp. v. Procter & Gamble Co., 752 F.2d 891, 897 (3d Cir. 1985).

In determining the admissibility of expert testimony, Rule 702 requires an assessment of three distinct restrictions to admissibility: "qualifications, reliability, and fit." Elcock v. Kmart Corp., 233 F.3d 734, 741 (3d Cir. 2000). An expert's opinion is reliable and thus admissible "if it is based on the methods and procedures of science." Id. at 745; see also In re TMI Litig., 193 F.3d 613, 670 (3d Cir. 1999).

In arguing for exclusion, AB misreads the one case on which it relies, Asarco LLC v. Americas Mining Corp., to argue that Professor MacKinlay's use of the Fama-French model is unreliable. 396 B.R. 278 (S.D. Tex. 2008). Actually, the Asarco court squarely rejected a Fama-French based Daubert attack: "The fact that [the expert] used a different method (the Fama-French method) to calculate a discount rate does not render him unqualified nor does it suggest his opinion is invalid." Id. at 360.

Asarco was a post-bench trial opinion in a bankruptcy matter. After rejecting the Daubert challenge, the Asarco judge proceeded to do what the jury will do in the present case – weigh the evidence. He chose not to accept the Fama-French calculation for two reasons: First, he found that as of 2002-2003, just a few years after the creation of the Fama-French approach, a typical valuation consultant would not have employed the Fama-French Model. Id. at 361. Second, the Fama-French analysis had yielded a discount rate that was several percentage points higher (leading to valuation that was significantly lower) than the other analyses using the more traditional "CAPM" or "build-up" methodology. The expert's result was "outside the range of the discount rates applied by contemporaneous valuation" experts. Id. at 362.[1]

---

[1] The court took note of a Delaware case, Cede & Co., Inc. v. MedPointe Healthcare, Inc., No. 19354-NC, 2004 WL 2093967, at *18-19 (Del. Ch. Ct. 2004), where, conversely, the court accepted the Fama-French calculus while rejecting an "out-of-line" result from an expert who did not use Fama-French. 396 B.R. at 362.

4

Neither of these criticisms applies here. First, as hinted at by the Asarco court, id. at 361, the Fama-French model has found increasing acceptance by the financial community: Morningstar's (Ibbotson's) Stocks, Bonds, Bills and Inflation 2007 Valuation Edition Yearbook ("Ibbotson's"), the leading treatise on business valuation, has been cited by both Plaintiffs' and Defendants' experts in this case (see Kursh Report at Ex. B;[2] Solomon Report at Tab B[3]). Ibbottson's lists the Fama-French Three-Factor Model as one of "several widely used and effective methods to estimate the equity cost of capital." Id. at 37; see also id. at 57 (describing Fama-French as a "popular method" for calculating the equity cost of capital). In fact, Ibbotson's dedicates an entire chapter to the Fama-French Model and concludes that it "provides a different approach to calculating the cost of equity" and "should be viewed as an additional tool available to analysts in determining the cost of equity." Id. at 173. Professor MacKinlay has testified that the Fama-French Model is "very widely used in industry by analysts who are making investment strategies where they're trying to value the companies." (MacKinlay Dep. 70:25-71:1.[4])

Similarly, the Fama-French methodology and results have been repeatedly accepted by courts having vast experience in valuation disputes. See In re Am. Int'l Group, Inc. Sec. Litig., 265 F.R.D. 157, (S.D.N.Y. 2010) (finding that defendants failed to rebut plaintiffs' expert testimony, based on a Fama-French model, that defendants committed fraud on the market); In re PNB Holding Co. Shareholder's Litig., No. 28-N, 2006 WL 2403999, at *30 (Del. Ch. Ct. Aug.

---

[2] Excerpts from the Expert Report of Samuel J. Kursh are attached as Exhibit A to the Declaration of Michael Lieberman.

[3] Excerpts from the Expert Report of Brent Solomon are attached as Exhibit B to the Declaration of Michael Lieberman.

[4] Excerpts from the deposition testimony of A. Craig MacKinlay are attached as Exhibit C to the Declaration of Michael Lieberman.

18, 2006) (accepting an expert's cost of capital calculation after the expert, like MacKinlay, checked his work by using the Fama-French Model); Cede & Co. Inc., Inc., 2004 WL 2093967, at *18 (rejecting the notion that the expert's use of the Fama-French model rendered his opinion unreliable); Union Ill. 1995 Inv. Limited P'ship v. Union Fin. Group, Ltd., 847 A.2d 340, 362 (Del. Ch. Ct. 2004) (using the Fama-French Model to calculate the cost of capital).

Moreover, AB should think about what Professor MacKinlay – the Joseph P. Wargrove Professor of Finance at the Wharton School and a scholar whose expertise[5] goes far beyond the Fama-French methodology – was asked to do in the present case: Competing experts used the "build-up" method, but came up with very different valuations. Importantly, the lion's share of their $40 million disagreement was accounted for by the different discount rates they used. For Professor MacKinlay to do another "build-up" calculation of the discount rate would have simply resulted in there being three such calculations instead of two; what was needed was an independent check, utilizing another accepted methodology, to see which of the two earlier calculations was the more reliable. Professor MacKinlay selected Fama-French as the most reliable method for objectively analyzing the discount conclusions of the dueling experts. (MacKinlay Dep. 120:15-135:5.) He considered this appropriate because the build-up method is less scientific than Fama-French and leaves too much room for subjective judgments: Taylor and Kursh "basically use generally the same methodology, and they get very different answers." (MacKinlay Dep. 121:24-122:1.) The use of the Fama-French Method, therefore, allowed Professor MacKinlay to "bring a scientific approach that's objective to the table, in the

---

[5] A copy of Professor MacKinlay's C.V. is attached as Exhibit D to the Declaration of Michael Lieberman.

framework of the modified capital asset pricing model" used by the other experts in the case. (MacKinlay Dep. 127:21-22.)

As it turned out, it was AB's expert, Samuel Kursh's, who had come up with the questionable discount rate. Professor MacKinlay's Fama-French analysis yielded a discount rate of 11.1%, quite close to Mr. Taylor's build-up result of 10.6%, while Mr. Kursh's 21.7% was the clear outlier. See Asarco, 396 B.R. at 362 (rejecting a conclusion because the discount rate was 13.4%, while others were in the 9-10% range).

Anheuser-Busch's challenge to Professor MacKinlay's use of the Dow Jones Low Cap Brewers Index is equally unwarranted. As an initial matter, AB's assertion that this index does not exist is ludicrous. Professor MacKinlay clearly identified the index in his report (see MacKinlay Report at 4[6]), the index is published by Dow Jones, "a leading full-service index provider that develops, maintains and licenses indexes for use as benchmarks and as the basis of investment products" which is best-known for the Dow Jones Industrial Average (see http://www.djindexes.com/aboutus/), and Professor MacKinlay testified at length at his deposition in September 2009 regarding the nature of the index, the type of companies contained within the Index as well as his use of the information in reaching his conclusion on the appropriate cost of capital (see MacKinlay Dep. at 35, 131-34). There is no support in the record for AB's irresponsible allegation that Professor MacKinlay "cannot identify the index he used as a proxy to measure the cost of equity." (AB Mot. at 4). Moreover, not only was he comfortable that the companies in the index were appropriate for the risk he was examining, but after AB criticized the composition of the index he created his own index of small beer manufacturers and

---

[6] The Expert Report of A. Craig MacKinlay is attached as Exhibit E to the Declaration of Michael Lieberman.

reran his calculations and verified his results. In fact, he got a lower cost of capital from that index. (MacKinlay Dep. 138:4-15.)

Finally, Anheuser-Busch asks the Court to limit Professor MacKinlay's testimony to rebuttal without any explanation as to the supposed need for such an arbitrary limitation. The Court should not give this request any weight.

For the foregoing reasons, the Court should deny Anheuser-Busch's untimely request to exclude the testimony of Professor MacKinlay.

A proposed order is attached.

Respectfully submitted,

Dated: July 15, 2010

HANGLEY ARONCHICK SEGAL & PUDLIN

By:  /s/ Michael Lieberman
William T. Hangley (admitted pro hac vice)
Joseph A. Dworetzky (admitted pro hac vice)
Michael Lieberman
Alva C. Mather
Rebecca L. Santoro
20 Brace Road, Suite 201
Cherry Hill, NJ 08034-2634
856-616-2100

*Attorneys for Plaintiffs*

**CERTIFICATE OF SERVICE**

    I, Michael Lieberman, hereby certify that, on this 15th day of July, 2010, I caused true and correct copies of Plaintiffs' Response in Opposition to Defendant Anheuser-Busch's Motion in Limine to Preclude Plaintiffs' Executives from Testifying on the Issue of Fair Market Value, together with the Declaration of Michael Lieberman and the exhibits attached thereto, to be transmitted by ECF filing upon:

    Peter Moll, Esquire
    Brian Wallach, Esquire
    Gurbir Grewal, Esquire
    Gregory Langsdale, Esquire
    Howrey LLP
    1299 Pennsylvania Avenue, NW
    Washington, DC 20004

    Michael Vassalotti, Esquire
    Brown & Connery, LLP
    360 Haddon Avenue
    Post Office Box 539
    Westmont, NJ 08108

    *Attorneys for Anheuser-Busch, Inc.*

    Natalie Garcia, Esquire
    John Bonventre, Esquire
    Landman Corsi Ballaine & Ford P.C.
    One Gateway Center, 4th Floor
    Newark, NJ 07102

    *Attorneys for InBev USA LLC*

            /s/ Michael Lieberman
            Michael Lieberman