NOT FOR PUBLICATION (Doc. No. 237)

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW JERSEY
CAMDEN VICINAGE

| | |
|---|---|
| WARREN DISTRIBUTING CO. d/b/a HUB CITY DISTRIBUTING CO. and WARREN DISTRIBUTING CO. SOUTH, PEERLESS BEVERAGE CO., INC., and SHORE POINT DISTRIBUTING CO., <br><br>Plaintiffs, <br><br>v. <br><br>IN BEV USA, LLC and ANHEUSER-BUSCH, INC., <br><br>Defendants. | Civil No. 07-1053 (RBK/JS) <br><br>**OPINION** |

**KUGLER**, United States District Judge:

This matter comes before the Court pursuant to Defendant Anheuser-Busch, Inc.'s motion for attorneys' fees and sanctions. Anheuser-Busch argues that Plaintiff Shore Point Distributing Company ("Shore Point") improperly disclosed confidential information in its motion to enforce a settlement agreement between the parties (the "Settlement Motion") (Doc. No. 227). Because there is clear disagreement between the parties over whether they promised to maintain the confidentiality of a settlement agreement, and Anheuser-Busch failed to demonstrate that Shore Point acted in bad faith when it publicly filed the motion to enforce the settlement agreement, the motion is DENIED.

**I.    BACKGROUND**

The events giving rise to this litigation are outlined in the Court's opinion in Warren

1

Distributing Co. v. InBev USA LLC, No. 07-1053, 2010 WL 2326168, at *1-3 (D.N.J. June 7, 2010).  Therefore, the Court will outline additional facts only as necessary to resolve the pending motion.

Crown-Beer Distributors ("Crown"), High Grade Beverage ("High Grade"), and Shore Point are beer distributors in New Jersey.  Prior to this lawsuit, Anheuser-Busch paid Shore Point over five million dollars for the fair market value of the distribution rights, and then subsequently transferred those rights to Crown and High Grade.  As a result of the transaction, both Crown and High Grade operate in areas that overlap with territory previously covered by Shore Point.  Crown and High Grade reimbursed Anheuser-Busch for the portion of the five million dollars attributable to Shore Point's sales in territory now covered by Crown and High Grade.  Crown and High Grade also agreed to indemnify Anheuser-Busch for any damages awarded to Shore Point in this litigation.

On March 6, 2007, Shore Point, Peerless, and Warren filed a lawsuit against Anheuser-Busch and InBev to recover the fair market value of the distribution rights.  Prior to trial, counsel for Shore Point and Anheuser-Busch participated in mediation discussions before Magistrate Judge Schneider.  When the mediation sessions proved unfruitful, counsel for Anheuser-Busch, Mr. Peter Moll, asked counsel for Crown, Mr. Richard Koenig, if he would speak to Mr. James Annarella, counsel for Shore Point, to see if they could reach a settlement.  Mr. Koenig agreed to Mr. Moll's request.  According to Anheuser-Busch, Mr. Moll instructed Mr. Koenig to keep strictly confidential any information discussed during the settlement negotiations.  (Def.'s Opp'n Br., at 3).

On July 9, 2010, Mr. Koenig met with Mr. Annarella to begin settlement negotiations.  The parties dispute certain representations made during the negotiations.  First, the parties

disagree over whether they promised to keep the settlement strictly confidential. Shore Point claims that Mr. Koenig never told Mr. Annarella that the settlement agreement was confidential. Mr. Annarella, claims that the email he sent to Mr. Koenig, which expressed the terms of the agreement between the parties, did not contain a provision guaranteeing strict confidentiality. (Pl.'s Letter Br., at 7; Annarella Decl. ¶ 4). Anheuser-Busch claims that the parties understood that the settlement negotiations were confidential. (Def.'s Letter Br., at 2). Second, the parties dispute whether Mr. Koenig had authority to bind Anheuser-Busch. Shore Point claims that Mr. Koenig never disclosed to Mr. Annarella that he was only authorized to speak on behalf of Crown. (Id.). Anheuser-Busch claims that Mr. Koenig never represented to Mr. Annarella that he had authority to enter a binding agreement on behalf of either Anheuser-Busch or High Grade. (Def.'s Opp'n Br., at 4).

According to Shore Point, Mr. Koenig offered Mr. Annarella $1.5 million to settle all claims against Shore Point during the meeting on July 9, 2010 and that later that day Mr. Annarella called Anheuser-Busch to accept the offer. Anheuser-Busch claims that the parties never reached an agreement. Shore Point also claims that on July 12, 2010, Mr. Annarella sent Mr. Koenig an email to confirm the terms of their agreement. The email stated:

> Hi Rick,
>
> I hope you had a good weekend.
>
> In furtherance of our meeting on Friday, I have set forth below and want to confirm with you the settlement terms we discussed. Of course, these terms and this email are for settlement purposes only and would not be admissible if we have to go to trial.
>
> 1. Shore Point will be paid $1.5 million and dismiss all claims it asserted in the suit.
> 2. In exchange all claims against Shore Point will be dismissed.
> 3. All parties agree not to

>   (a) use any document produced by Shore Point or on its behalf at trial.
>   (b) call any Shore Point owners, officers or employees (including former employees) to testify at trial.
>   (c) call Shore Point's accountants to testify at trial.
> 4. The terms of our settlement will not be admissible at trial.
>
> Please confirm to me your understanding and agreement to these terms so that the lawyers can proceed to put it in place.
>
> Also, could you have Anthony let me know if he is on the same page as well?
>
> I'll talk to you soon,
>
> Jimmy

(Pl.'s Letter Br., at 7-8).

Mr. Koenig forwarded Mr. Annarella's email to Mr. Moll. After reviewing the email, Mr. Moll informed Mr. Koenig that some of the terms in the email were unacceptable. (Moll Decl. ¶ 11; Koenig Decl. ¶¶ 11-13). Mr. Moll claims that he also informed both Mr. Guariglia and Mr. Wallach, Shore Point's settlement counsel, that many of the terms outlined in Mr. Annarella's email were unacceptable and that a material term to any settlement with Shore Point was that the parties could use Shore Point depositions at trial. (Moll Decl. ¶ 14). Shore Point claims that neither Anheuser-Busch nor Mr. Koenig stated that additional approvals were necessary to solidify the agreement between Mr. Koenig and Shore Point on July 9, 2010.

On July 19, 2010, the trial commenced, and Shore Point filed the Settlement Motion. Anheuser-Busch filed its opposition to the Settlement Motion on July 25, 2010 (the "Opposition Brief") (Doc. No. 237). On July 27, 2010, Shore Point withdrew the Settlement Motion (Doc. No. 248). Now, Anheuser-Busch seeks an award of attorneys' fees. Additionally, Anheuser-Busch asks this Court to sanction Shore Point for publicly filing the Settlement Motion.

## II.     DISCUSSION

A district court may use its inherent power to award sanctions, including an award of attorneys' fees, when an attorney "act[s] in bad faith, vexatiously, wantonly, or for oppressive reasons." In re Prudential Ins. Co. Am. Sales Practice Litig. Agent Actions, 278 F.3d 175, 181 (3d Cir. 2002) (internal quotations omitted).  However, "because of their very potency, inherent powers must be exercised with restraint and discretion." Chambers v. NASCO, Inc., 501 U.S. 32, 44 (1991); Republic of the Philippines v. Westinghouse Electric Corp., 43 F.3d 65, 74 (3d Cir. 1995).  Thus, before exercising its inherent power to sanction, a district court must first "consider whether any Rule- or statute-based sanction[] [is] up to the task." Montrose Med. Grp. Participating Savings Plan v. Bulger, 243 F.3d 773, 784 (3d Cir. 2001).

If the district court is satisfied that no Rule- or statute-based sanction is "up to the task," the court must consider the following factors before imposing sanctions.  First, the court must "ensure that there is an actual factual predicate for flexing its substantial muscle under its inherent powers." In re Cendant Corp., 260 F.3d 183, 200 (3d Cir. 2001).  Second, the court must "ensure that the sanction is tailored to address the harm identified." Id.  Third, the court must "consider the conduct at issue and explain why the conduct warrants a sanction." Id.

Anheuser-Busch argues that the Court should use its inherent power to sanction Shore Point's conduct.  Specifically, Anheuser-Busch argues that:  (1) courts have used the inherent power to sanction in cases where parties fail to file settlement agreements under seal; (2) Shore Point intentionally filed the Settlement Motion unsealed and in bad faith; and (3) the Court should impose sanctions because refusing to do so would violate New Jersey's policy of encouraging settlements by keeping settlement negotiations confidential.  (Def.'s Letter Br., at 4-

5). Plaintiff argues that sanctions are inappropriate because the parties never agreed to confidentiality. (Pl.'s Letter Br., at 7-8).

The Court holds that sanctions are inappropriate because there is no factual predicate for exercising its inherent powers. First, the evidence reveals a reasonable dispute over whether the parties agreed to confidentiality. While Anheuser-Busch argues that the parties agreed that the Settlement Agreement was confidential, Shore Point argues that the parties never agreed to confidentiality. Indeed, both Mr. Annarella's affidavit and the email Mr. Annarella sent to Mr. Koenig on July 12, 2010 refute Anheuser-Busch's contention that the settlement agreement was confidential. The email Mr. Annarella sent Mr. Koenig to confirm the terms of the settlement does not state that the parties agreed to keep the settlement confidential. As Mr. Annarella states in his affidavit: "[t]he email I sent to Mr. Koenig on July 12, 2010 . . . confirmed the settlement and expressly referred to the settlement not being admissible at trial, as opposed to "strict confidentiality." (Annarella Sanctions Decl. ¶ 13). Thus, at most, the evidence demonstrates that Shore Point filed the Settlement Motion publicly because it believed that the parties did not agree to keep the information confidential. This conduct alone does not provide a basis for the Court to "flex[] its substantial muscle under its inherent powers" to sanction. Cendant, 260 F.3d at 200.

Moreover, sanctions are inappropriate because the facts demonstrate that it was justifiable for Shore Point to believe that the parties entered into an oral agreement on July 9, 2010. In New Jersey, "it is well established . . . that an agreement to settle a lawsuit, voluntarily entered into, is binding upon the parties, whether or not made in the presence of the court, and even in the absence of writing." See Pascarella v. Bruck, 462 A.2d 186, 189 (N.J. Super. Ct. App. Div. 1983) (quoting Green v. John H. Lewis & Co., 436 F.2d 389, 390 (3d Cir. 1970)). Thus, "as

6

long as . . . parties orally agree to the essential terms [of a settlement agreement], the settlement "will be enforced notwithstanding the fact that a writing does not materialize because a party later reneges." McDonnell v. Engine Distributors, 2007 WL 2814628, at *3 (D.N.J. Sept. 24, 2007).  In this case, the alleged agreement between the parties contained all of the elements of a valid contract:  offer, acceptance, and consideration.  Shafer v. Cronk, 532 A.2d 1131, 1133 (N.J. Super. Ct. App. Div. 1987).  In his sworn affidavit, Mr. Annarella stated that on July 9, 2010, Mr. Koenig offered to pay Shore Point $1.5 million in exchange for Shore Point dismissing all of its claims against Anheuser-Busch.  (Anarrella Decl. ¶ 4).  Later that day, Mr. Annarella called Mr. Koenig to accept the agreement.  (Id. ¶ 5).  Thus, although Mr. Moll disputed the terms of the agreement and refused to enforce the agreement, Mr. Annarella certainly had a reason to believe the parties entered into an enforceable agreement.

Additionally, Shore Point had reason to believe that Mr. Koenig had the authority to contract on behalf of Anheuser-Busch.  In New Jersey, an agent has apparent authority when "the principal has, by his voluntary act, placed the agent in such a situation that a person of ordinary prudence, conversant with business usages and the nature of the particular business, is justified in presuming that such agent has authority to perform the particular act in question . . . ."  U.S. v. Lightman, 988 F. Supp. 448, 464-65 (D.N.J. 1997) (quoting United States Plywood Corp. v. Neidlinger, 194 A.2d 730, 734 (N.J. 1963)).  Here, although Anheuser-Busch is the named defendant in this litigation, the facts demonstrate that the party with the real financial interest in the litigation is Crown, not Anheuser-Busch, and therefore, it was entirely reasonable for Shore Point to believe that Mr. Koenig had the authority to bind Anheuser-Busch.  In effect, as Shore Point eloquently notes in their Brief, Anheuser-Busch has "no skin in the game."  (Pl.'s Letter Br., at 5).  After Anheuser-Busch paid Shore Point for the distribution rights, Anheuser-

Busch sold those rights to Crown and Crown agreed to indemnify Anheuser-Busch for any amount of compensation awarded to Shore Point during trial.[1]  Hence, Crown is the party ultimately responsible for paying any damages entered against Anheuser-Busch.  Therefore, it was entirely reasonable for Crown to believe that the party with the largest financial interest in the outcome of the litigation could negotiate an agreement on behalf of the party with little financial interest in the litigation.

Furthermore, it is reasonable for Shore Point to believe that Mr. Koenig had the authority to bind Anheuser-Busch for both the New Jersey Franchise Practices Act claims and Anheuser-Busch's counterclaim for unjust enrichment for Shore Point's post-termination beer sales.  Just as a decision favoring Shore Point on the Practices Act claim would have a harmful financial impact on Crown, so too would a decision favoring Shore Point on Anheuser-Busch's unjust enrichment claim.  Because Anheuser-Busch sold the distribution rights to Crown and High Grade, if Shore Point continued to distribute the European Brands in territory covered by Crown, Crown would suffer the ultimate financial loss.  Therefore, it was reasonable for Crown to believe that Mr. Koenig had the authority to bind Anheuser-Busch on both the Practices Act claims as well as Anheuser-Busch's unjust enrichment counterclaim.

Anheuser-Busch's argument that sanctions are necessary to enforce New Jersey's policy of protecting the confidentiality of settlement negotiations is unavailing.  In New Jersey, "[c]ourts have long-recognized that public policy favors settlement of legal disputes, and that confidentiality is a 'fundamental ingredient of the settlement process.'"  State v. Williams, 877 A.2d 1258, 1266 (N.J. 2005) (quoting Brown v. Pica, 823 A.2d 899, 901 (N.J. Super. Ct. Law Div. 2001)).  This rule effectively prohibits parties from using information discussed during

---

[1] Anheuser-Busch's Opposition Brief notes that "Neither Crown nor High Grade are named parties in this action, although both are indemnitors of Anheuser-Busch."  (Def.'s Opp'n Br., at 3).

settlement negotiations at trial.  See Williams, 877 A.2d at 1270 (finding that defendant's need for mediator's testimony did not overcome mediator privilege).  However, New Jersey's policy does not prohibit a party from filing a motion to enforce an oral settlement agreement between the parties in the public record.

Because Shore Point believed that the settlement negotiations created a valid oral agreement between the parties, and there is a presumptive right to public access of settlement agreements, the Court has no basis for sanctioning Shore Point for failing to comply with New Jersey's policy.  Under the First Amendment and federal common law, there is a presumptive right to public access of judicial records and proceedings, including settlement agreements.  See Bank of Am. Nat. Trust and Sav. Ass'n v. Hotel Rittenhouse, 800 F.2d 339, 343 (3d Cir. 1986) (citing Nixon v. Warner Communications, Inc., 435 U.S. 589 (1978)).  As the Third Circuit held in Bank of American Nat. Trust, "the courts approval of a settlement or action on a motion are matters which the public has a right to know about and evaluate."  Id. at 344.  Moreover, the public right of access takes precedence over the judicial policy of promoting the settlement of litigation.  See id. 344-45 (acknowledging the strong public interest in encouraging the settlement of private litigation, but finding that settlement agreements submitted to a federal court for review are subject to the presumption of public access).  Shore Point had the right to file a motion to enforce what it believed to be a settlement agreement between the parties. Although Shore Point could have filed the Settlement Motion under seal, Shore Point's decision to file the motion in the public record is not sanctionable because Shore Point had no obligation to file the Settlement Motion under seal.  Moreover, the evidence fails to demonstrate that Shore Point filed the motion in bad faith.  Therefore, because Shore Point engaged in no wrongdoing

9

by filing the Settlement Motion in the public domain, the Court finds that sanctions are inappropriate.

### III.     CONCLUSION

For the reasons discussed above, the Court denies Anheuser-Busch's motion for attorneys' fees and sanctions.  An appropriate order shall issue today.


Date:  12/14/2010                                    /s/ Robert B. Kugler
                                                     ROBERT B. KUGLER
                                                     United States District Judge